FILED
 2011 Mar-01  PM 01:01
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **NEARINE HOLT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:10-cv-1478-AKK** |
| **WAL-MART STORE NO. 661** ) | |
| **and MANAGEMENT LORI** ) | |
| **HUNTLEY,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Nearine Holt ("Plaintiff") filed this action in the Circuit Court of Limestone County, Alabama, against Defendants Wal-Mart Store No. 661 ("Wal-Mart") and Lori Huntley ("Huntley") (collectively "Defendants") on May 11, 2010, alleging discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981, and state law claims for wrongful discharge and negligence.  Doc. 1 at 12; doc. 16. Defendants removed the case to this court on June 11, 2010.  Doc. 1.

Thereafter, on December 22, 2010, Defendants moved for summary judgment.  Doc. 38.  Plaintiff responded by filing a Motion to Traverse Defendants

Motion for Summary Judgement, doc. 45, and Defendants replied, doc. 46. Therefore, this matter is ripe for resolution.

The incident that eventually caused Plaintiff's discharge occurred after Plaintiff clocked out and was shopping at Wal-Mart. Plaintiff believes that as a "customer," Wal-Mart does not have the right to discipline her since she was off-the-clock:

> But when I'm on my own time and I'm in the store, you don't tell me how I'm supposed to do this or how I'm supposed to do that. You don't write me up for something I did that wasn't pertaining to Wal-Mart. This was my time. This was not your time.
>
> ****
> From the get-go, I don't like even being called -- I didn't like being called in the office for something that happened while I was on my own time. That's my time.

Doc. 42-1 at 20, depo. at 71; doc. 42-1 at 28, depo. at 102. Given that she was off the clock, Plaintiff justifiably feels that Defendants treated her unfairly and essentially wants this court to reverse the decision to terminate her. Unfortunately for Plaintiff, "'Title VII addresses discrimination. Title VII is not a shield against harsh treatment at the workplace.' Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall*

*Commc'n*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citations omitted). Moreover, even if this court disagreed with the discharge decision, this court is not allowed to act as a super personnel board that substitutes its business judgment for that of an employer. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). Instead, this court's role is to ascertain whether Plaintiff has established her claim of discrimination. Based on its independent review of the Complaint and Plaintiff's deposition testimony, the court concludes that Plaintiff failed to meet her burden of establishing that racial animus motivated her discharge. Therefore, for the reasons stated below, Defendants' motion is **GRANTED** as to the race discrimination claim.

Although Defendants failed to brief the state law claims, it did, however, move for summary judgment "as to each of the plaintiff's claims." Doc. 38 at 1. As it relates to Plaintiff's claims for wrongful discharge and negligent termination, no such claims exist under Alabama law for an at-will employee. *Tyson Foods, Inc. v. McCollum*, 881 So. 2d 976, 983 n.14 (Ala. 2003); *Cunningham v. Dabbs and ENT Clinic, P.A.*, 703 So. 2d 979, 981 (Ala. Civ. App. 1997). Therefore, Defendants' motion is **GRANTED** as to Plaintiff's state law claims.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  However,

"mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II.  FACTUAL BACKGROUND

Plaintiff's limited response states generally that she "disputes the declaration of Lori Huntley and Terrell Hughes" and alleges that Defendants "rephase [sic] some of the meeting held on November 18, 2010, to construe that Plaintiff provided statements that were never provided." Doc. 45 at 1-2.  Other than these statements, Plaintiff's response does not otherwise dispute Defendants' presentation of the facts.  Nevertheless, the facts are presented in a light most favorable to Plaintiff.

Plaintiff is a African American woman who, during the relevant period, worked for Wal-Mart as a cashier. Doc. 42-1 at 7, depo. at 20.  Defendant Lori Huntley, who is Caucasian, is the manager of Wal-Mart. Doc. 42-2 at 2, ¶ 1.

On December 31, 2008, while wearing her Wal-Mart uniform (minus her name tag), Plaintiff clocked out from her shift, shopped for groceries for approximately 35-40 minutes, and then stood in cashier Janis Blankenship's ("Blankenship") register line behind several other customers. Doc. 42-1 at 10;

depo. at 30-32.  After waiting in line for "a year and a day," Customer Service Manager ("CSM") Linda Craig ("Craig") asked Plaintiff to move to register four so that Blankenship could take her break.  *Id.* at 11; depo. at 37.  As she began to comply, Plaintiff noticed "five or six people" in line at register four, causing her to respond, "Oh, no, no, no.  That's all right.  We'll stay right here."  *Id*. at 12; depo. at 39.  When Craig responded, "Well, I was going to shut [Blankenship] down for break," Plaintiff went to register four and stood in line behind four or five customers.  *Id*.; depo. at 40.  Subsequently, a customer entered Blankenship's line at register one and checked out, which prompted Plaintiff to say to Craig, "I thought you said she was fixing to go to break."  *Id.* at 13; depo. at 43.  After Plaintiff checked out, Craig walked over to Plaintiff and yelled, "Don't you yell at me no more.  When I say she's going on break, I mean she's going on break."  *Id*. at 14; depo. at 46.  Plaintiff responded, "I don't give a damn."  *Id*.; depo. at 47.  After Plaintiff and Craig repeated the same exchange, Craig asked Plaintiff, "Do you want to take this in the back?"  Doc. 42-1 at 14; depo. at 47.  Plaintiff responded, "No, let's take it outside.  I'm off the clock."  *Id*. at 14; depo. at 47-48.  Craig walked off and Plaintiff left the store.  *Id*. at 15; depo. at 52.

Huntley investigated the incident by taking statements from Plaintiff, Craig, and an unidentified Wal-Mart employee who witnessed the incident from a nearby

register.  Doc. 42-2 at 14-18.  Based on her investigation, Huntley determined that Craig had not "initiated the altercation, had not yelled, had not threatened Ms. Holt, and had not used profanity," but that Plaintiff had "violated Wal-Mart's Respect for the Individual policy by yelling at, cursing at, and threatening Ms. Craig."  Doc. 42-2 at 3.

    Since Plaintiff received a verbal coaching in January 8, 2008, Huntley decided to issue Plaintiff a written coaching for the infraction with Craig, under the Coaching for Improvement Policy.  *Id*.  The Coaching for Improvement Policy is a progressive discipline policy with four levels:  I - verbal coaching, II - written coaching, III - Decision-Making Day ("D-Day"), and IV - termination.  Doc. 42-2 at 7-8.  Written coaching is "a more serious discussion than a verbal coaching" and requires the employee's acknowledgment of the issue and execution of an acceptable detailed action plan.  Doc. 42-2 at 8.  D-Day is "the final opportunity for an associate to evaluate their behavior in view of Wal-Mart's expectations prior to Termination" and requires the employee to, 1) receive formal documentation and acknowledgment of the discipline, 2) receive one day off with pay to "decide whether they will make the required improvement," and 3) discuss with management the action plan developed during their day off and their decision to make the required improvement.  *Id*.  An employee who refuses to provide an

acceptable action plan "will be advanced to the next level of coaching, up to and including termination." Doc. 42-2 at 11.

On January 6, 2009, Wal-Mart manager Terrell Hughes ("Hughes") and Vickie Bumpus attempted to meet with Plaintiff, presumably for her to acknowledge the written coaching, but Plaintiff "walk[ed] out of the office." Doc. 42-1 at 19; doc. 42-2 at 3; depo. at 66. Later that day, Huntley and Hughes met with Plaintiff and unsuccessfully attempted to get her to acknowledge the written coaching by signing a form. Doc. 42-1 at 17; depo. at 60-61. Huntley informed Plaintiff that she did not have to agree with the information on the form and could "seek higher management or you can use the Open Door Policy," but that Plaintiff had to sign to acknowledge receipt of the written coaching. Doc. 42-1 at 19; depo. at 68. When Plaintiff refused to sign the form, Huntley escalated Plaintiff's discipline to a level III D-Day suspension, and informed Plaintiff that her D-Day suspension was January 7, 2009, and to return to work with an action plan on January 8, 2009. *Id.*; depo. at 69.

Plaintiff returned to work on January 8 to present her action plan to Huntley and Hughes. *Id.* However, Plaintiff's action plan did not state what she intended to do differently, as the policy required. Instead, she voiced her displeasure with the decision to discipline her for an incident that occurred while she was off the

clock:

> This is my statement, <u>it is suppose [sic] to consist of what I intend to do better to make things better for myself or anyone else at work or in the work place and this is my answer 'I was not at work I was off the clock on my own time'</u> but my question is what does Wal-Mart intend to do better to treat the associates that are not on the clock like a real customer and what kind of management do Wal-Mart have to think the associates that do work there belong to them 24/7.

Doc. 42-1 at 65 (emphasis added). Rather than following the policy and outlining what she intended to do to rectify the situation, Plaintiff attacked the policy instead.

Huntley told Plaintiff that her action plan was more appropriate for an Open Door issue and asked her to rewrite it. *Id*. at 22; depo. at 77-78. Plaintiff responded that "this was my action plan, and I was sticking with it." Doc. 42-1 at 21; depo. at 77. Huntley told Plaintiff that her action plan was unacceptable and advanced her discipline to level VI termination. *Id*. at 21; depo. at 77; doc. 42-2 at 3 ¶ 8. Plaintiff's exit interview form states that Wal-Mart terminated her for "failure to provide action plan." Doc. 42-1 at 67.

Approximately three months later, on April 14, 2009, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on race, in violation of Title VII. Doc. 42-1 at 68. On March 5, 2010, the EEOC issued Plaintiff her right-to-sue letter. Doc. 1 at 34.

## III.  ANALYSIS

A *pro se* complaint is to be construed liberally.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  Plaintiff asserts claims of race discrimination pursuant to Title VII and Section 1981,[1] and wrongful discharge and negligence.

Plaintiff's fails to present argument or evidentiary support to dispute the facts as presented by Defendants.  In fact, she states only that she "disputes the declaration of Lori Huntley and Terrell Hughes and at trial it will be discovered that the exhibits of Lori Huntley and Terrell Hughes including their depositions has been altered to benefit the defendants."  Doc. 45 at 1-2.  However, Plaintiff's unsupported statement disputing Huntley's and Hughes's declarations is insufficient to call into question their accuracy.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" (quoting *Hedberg v. Ind. Bell Tel Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995))).  Therefore, the court considered those declarations in ruling on

---

[1] Because claims under Section 1981 "require the same elements of proof as a Title VII action," the court applies the same analysis to Plaintiff's Title VII and Section 1981 claims for race discrimination.  *Palmer v. Dist. Bd. of Trs. of St. Petersburg Junior Coll.*, 748 F.2d 595, 596 n.2 (11th Cir. 1984).

this motion. Likewise, although Plaintiff essentially abandoned her claims by failing to rebut Defendants' contention, *see Zivojinovich v. Barner*, 525 F.3d 1059, 1062 n.1 (11th Cir. 2008) (failure to offer any argument in a brief abandons the issue), the court undertakes an analysis of the facts nevertheless.

A.  *Title VII and Section 1981 claims.*

The court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Plaintiff's race discrimination (disparate treatment) claim since this is a circumstantial evidence case. Under that framework, plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If plaintiff satisfies her initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

1. Plaintiff cannot establish a *prima facie* case of race discrimination.

To establish a *prima facie* case of disparate treatment, Plaintiff must show: (1) membership in a protected class; (2) that she qualified for the position; (3) that she suffered an adverse employment action; and (4) that Defendants treated her less favorably than a similarly-situated individual outside her protected class. *Sridej v. Brown*, 361 Fed. Appx. 31, 33 (11th Cir. 2010) (per curiam) (citation omitted). Based on her EEOC charge, doc. 42-1 at 68, complaint, doc. 1 at 17, ¶ 6, and deposition testimony, doc. 42-1 at 28, depo. at 103, Plaintiff's entire discrimination claim hinges on her contention that Defendants treated her differently than Craig, the CSM. To prevail then, Plaintiff must, at a minimum, show that she and Craig are similarly situated. Defendants contend that Plaintiff "cannot establish a *prima facie* case because her alleged Caucasian comparator - CSM Craig - was not similarly situated" since Craig "was in a supervisory capacity, while Plaintiff was a cashier." Doc. 39 at 17.

"To show that employees are similarly situated, the plaintiff must show the 'employees are similarly situated in all relevant respects.'" *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citation omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*,

376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). "It is also 'necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Sridej*, 361 Fed. Appx. at 35 (citing *Knight*, 330 F.3d at 1316).

Turning to the facts here, Plaintiff's reliance on Craig is misplaced since she and Craig are not similarly situated in several respects. First, Plaintiff was a cashier, and CSM Craig is a "non-management hourly associate who supervises cashiers." Doc. 42-2 at 2. In other words, Craig was in fact Plaintiff's supervisor, doc. 42-1 at 11; depo. at 34, 36, and, as such, is not similarly situated to Plaintiff. Second, even ignoring the supervisory distinction, Plaintiff is also not similarly situated to Craig because the evidentiary record does not support a finding that Craig engaged in misconduct "nearly identical" to Plaintiff's and yet received favorable treatment. While there is conflicting testimony about whether Craig raised her voice during the exchange with Plaintiff, it is undisputed that Craig neither used profanity nor threatened Plaintiff. In fact, when asked about this in her deposition, Plaintiff never contended that Craig used profanity. Doc. 42-1 at 14; depo. at 46-48. In contrast, Plaintiff admitted she said, "I don't give a damn." Doc. 42-1 at 14; depo. at 47. Moreover, there is no evidence that Criag ever refused to sign a written coaching, which is what led to Plaintiff's suspension, or

refused to provide an action plan that conforms to the policy, which is why Wal-Mart discharged Plaintiff.  Absent such evidence, Plaintiff's reliance on Craig misses the mark.

In the final analysis, Plaintiff presented no evidence of a comparator Defendants treated more favorably after that employee refused to sign a written counseling or to provide a valid action plan.  Therefore, Plaintiff's *prima facie* case fails.

    2.    <u>Plaintiff failed to produce evidence that Defendants' proffered reason for her termination was pretext</u>.

Alternatively, even if Plaintiff <u>could</u> establish a *prima facie* case, her discrimination claim still fails because she cannot show that the articulated reason for her discharge is pretextual.  To establish that Defendants' stated reason is a pretext for unlawful discrimination, Plaintiff "must demonstrate 'such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Sampath v. Immucor, Inc.*, 271 Fed. Appx. 955, 960 (11th Cir. 2008) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  Here, Defendant argues that it followed its "progressive discipline process outlined in the Coaching for Improvement policy" and terminated Plaintiff

for her failure to provide an acceptable action plan.  Doc. 39 at 20.  Plaintiff failed to rebut this contention or present any argument or evidence that the proffered reason was pretextual.

In addition, it is clear from Plaintiff's own testimony that she, in fact, engaged in the conduct that led to her suspension and termination.  Unfortunately for Plaintiff, her tunnel vision and focus on the fact that she was off-the-clock led her to lose the ability to reason.  As a result, she refused to sign the acknowledgment of the written discipline and specifically stated in her action plan that she would not comply and produce a valid plan.  Based on the facts and because it makes perfect sense for an employer to expect anyone dressed in its uniform to behave appropriately, the court sees no evidentiary basis to find that Defendants' proffered reasons are pretext for unlawful discrimination.  Therefore, summary judgment on her discharge claim is warranted.

### IV.  CONCLUSION

Having determined that there are no genuine issues of disputed fact for trial, the court hereby **GRANTS** summary judgment in favor of Defendants.

Done the 1st day of March, 2011.

                                                                         _____
                                                                             **ABDUL K. KALLON**
                                                                UNITED STATES DISTRICT JUDGE